UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
------------------------------------------------------
:
UNITED STATES : CASE NO. 1:07-cr-00566
:
       Plaintiff, :
:
vs. : OPINION & ORDER
: [sua sponte]
RANDY S. DELANO, :
LOREAL S. JOHNSON :
:
       Defendants. :
:
------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

In an Opinion and Order dated February 26, 2008, the Court decided that both evidence and statements were admissible against the Defendant Randy Delano, but not admissible against the Defendant Loreal Johnson. [Doc. 41]. The Court collaterally estopped Defendant Delano from attacking the probable cause of the initial traffic stop, as he had been adjudicated guilty of the traffic violations. On February 27, 2008, the Sixth Circuit issued a ruling stating, among other things, that the prosecution could not use collateral estoppel against a Defendant. *See Bies v. Bagley*, No. 06-3471, --- F.3d ----, 2008 U.S. App. LEXIS 4160, *38-39; 2008 WL 507818 (6th Cir. Feb. 27, 2008). For that reason, the Court ordered briefing on whether it should change the order in the motion to suppress. For the reasons stated below, the Court **AMENDS** the earlier decision, but still **DENIES** Defendant Delano's motion.

## I. Background

This Court's reconsideration of it's earlier order only concerns the reasonable suspicion that

-1-

Case No. 1:05-cv-2485
Gwin, J.

caused the initiation of the traffic stop. The Court's earlier order summarized the facts surrounding this event as follows:

> On June 3, 2007, Deputy George Taylor Cleveland, an Ashtabula County Sheriff's Office deputy sheriff, patrolled in a marked police car on Fortney Road, in Windsor Township, Ohio. Although Fortney Road is in a very rural and sparsely populated part of Ashtabula County, Deputy Taylor testified it is a hot-spot for drug and illegal activity in Ashtabula County. While he drove up Fortney Road, he observed a 1987 Chevrolet Camaro preparing to back from the driveway of a house occupied by a known drug dealer, Larry Adams, aka "Navigator J." [Tr. at 13-15].
>
> Traveling toward the Camaro, Deputy Cleveland observed the vehicle stop abruptly as the deputy's car approach. When he drove by, Deputy Cleveland said that the driver of the car, later identified as Defendant Delano, shielded his face and looked away. Deputy Cleveland testified that the driver had ample time to pull out of the driveway before he passed, and he surmised the driver was avoiding him. [Tr. at 17-20].
>
> After passing the residence and driveway, Deputy Cleveland slowed down and continued to drive south down the road, keeping an eye on the Camaro in his rear-view mirror. Approximately three minutes later, when Deputy Cleveland estimated that he was about a mile down Fortney Road, the Camaro exited the driveway and began heading north, in the opposite direction from Deputy Cleveland's vehicle. Deputy Cleveland turned his car around, and drove approximately 60 miles an hour to catch up to the Camaro. [Tr. at 18-19, 79]. He was successful in catching up to the Camaro as the Camaro approached the intersection of U.S. Route 322 and Fortney Road. After catching up with the Camaro, Deputy Cleveland drove "a couple of" car lengths behind it. [Tr. at 20].
>
> From this vantage point, Deputy Cleveland testified that he could observe that the driver was not wearing a seatbelt.[1/] Deputy Cleveland also testified that although he was two car lengths behind he could see the driver continuously look at his rear view mirror and he improbably testified that he could see the passenger raise her waist up in her seat and "[h]er arms were pushing something down to her middle section and her back was creating a leverage." [Tr. 106]. Acknowledging that a Camaro "sits low to the ground," Deputy Cleveland gave no credible explanation how he could see what a passenger was doing in her waist area. [Tr. 80].
>
> Deputy Cleveland acknowledged that he "didn't believe that [his] observations at that point were substantial enough to make the stop independent of a traffic violation." [Tr. at 102] Therefore, Deputy Cleveland decided to follow the vehicle, check the license plates for warrants, and observe the vehicle to develop probable cause. [Tr. at 104].
>
> After following the Camaro to an intersection, Deputy Cleveland stated that

---

[1/] Ohio law does not permit an officer to stop a vehicle for this offense. [Tr. at 109]; O.R.C. § 4513.39.

Case: 1:07-cr-00566-JG   Doc #: 47   Filed: 03/03/08   3 of 6.   PageID #: 338

Case No. 1:05-cv-2485
Gwin, J.

> he observed two moving traffic violations: the driver did not stop until well after the stop sign at the intersection of Fortney and OH-322 and the driver initiated his turn signal less than 100 feet before the intersection. [Tr. at 24]. Relative to the distance a vehicle is required to stop with regards to a stop sign, Deputy Cleveland apparently misunderstood Ohio law. Cleveland testified that "in the State of Ohio you also have to stop specifically at the stop sign, and then move past if you need to." [Tr. 23]. Actually, Ohio law does not direct drivers to stop opposite the stop sign but instead requires: "(A) . . . every driver of a vehicle [] approaching a stop sign shall stop at a clearly marked stop line, but if none, [] then at the point nearest the intersecting roadway where the driver has a view of approaching traffic on the intersecting roadway before entering it." O.R.C. § 4511.43(A).
>
> Deputy Cleveland radioed to his dispatch that he was going to stop the car. [Tr. at 28]. The radio log shows that he radioed his intention to stop the car at 6:47 pm. [Ex. 12].

[Doc. 41].

## II. Discussion

*A. The Use of Collateral Estoppel*

In its initial ruling, this Court collaterally estopped Defendant Delano from asserting that he did not commit the traffic violations. The prosecution's brief asserts that this was proper, and *Bies v. Bagley*'s ruling on collateral estoppel does not govern this case. In *Bies,* the Sixth Circuit found that "collateral estoppel may only be used by the accused." *Bies,* 2008 WL 507818 at *13. The United States argues that the *Bies* decision cited cases that had ruled that collateral estoppel could not be used against a defendant when it would estop a defendant from contesting an element of the defense. Thus, it argues that the prosecution can use traffic violations to collaterally estop a defendant in the context of a motion to suppress. The Court finds this unpersuasive. *Bies* stated that the prosecution could not collaterally estop a defendant "[b]ecause of a criminal defendant's 'interest of transcending value' in vindicating his rights in a criminal case." *Id.* Defendant Delano's rights under the Fourth Amendment are at issue in this motion to suppress. As such, the Court finds that *Bies*'s holding applies in this contest.

-3-


Case No. 1:05-cv-2485
Gwin, J.

Moreover, the United States argues, that if this Court were to find that Defendant Delano had not committed the traffic violations, it would undermine the principles of comity as stated in *Heck v. Humphrey* and the Full Faith and Credit statute. 512 U.S. 477, 484 (1994); 28 U.S.C. § 1738. *Heck v. Humphrey*, however, emphasized that a criminal defendant should not be allowed to collaterally attack his state-court conviction in federal court *via a civil suit*. This case, by contrast, is not a civil §1983 action, but a criminal action against the Defendant. For these reasons, the Court determines that it must amend its past order and not apply collateral estoppel to Defendant Delano.

*B. The Initial Stop*

The Fourth Amendment prohibits "unreasonable searches and seizures" by the government. U.S. CONST. amend. IV. Temporary detention of persons during a traffic stop is a seizure of persons and therefore required to be reasonable under the circumstances. *Whren v. United States*, 517 U.S. 806, 810 (1996). "As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred. *Id.* Subjective intent of the officer plays no role in this analysis. *Id.* at 813.

Deputy Cleveland testified that he observed two moving violations. According to him, Defendant Delano failed to signal a turn 100 feet before reaching the intersection in violation of O.R.C. 4511.39, and he failed to stop before the stop sign in alleged violation of O.R.C. 4511.43. As the Court noted in its earlier order, Deputy Cleveland appears to be mistaken regarding Ohio law. Defendant Delano need not stop *before* a stop sign, but "at the point nearest the intersecting roadway where the driver has a view of approaching traffic on the intersecting roadway before entering it." O.R.C. § 4511.43(A). The Court, however, finds that it need not rest its decision on the failure to

Case No. 1:05-cv-2485
Gwin, J.

stop adjacent to the stop sign.

O.R.C. 4511.39 provides: "When required, a signal of intention to turn or move right or left shall be given continuously during not less than the last one hundred feet traveled by the vehicle or trackless trolley before turning. . ." Defendant Delano argues that the 'when required' language should be construed to understand only at four-way intersections. The 'when required' language, however, "is not itself meant to create a conditional aspect to the statute's requirements." *State v. Smith*, 156 Ohio App. 3d 238, 241 (2004). Instead, "[t]he phrase 'when required' simply refers to a situation in which the driver intends to change direction on the roadway." *State v. Lowman*, 82 Ohio App.3d 831, 835 (1992); *see also State v. Beacham*, 2003 WL 22763534, (Ohio App. Nov. 18, 2003)(turn signal required for 45 degree turns as well as 90 degree turns).

Defendant Delano changed direction on the roadway, turning off of Fortney Road and onto OH-322. O.R.C. § 4511.39 requires that he signal 100 feet before the intersection. The Court finds that Defendant Delano did not signal adequately before the intersection. The Court believes Deputy Cleveland's testimony on this point because it is not objectively incredible and nothing in the record contradicts this statement. Finally, the Court observes that in its experience almost no drivers signal a full 100 feet before a turn.[2] Despite the typicality of drivers turning without having previously signaled the turn 100 feet before, the Court has never seen any law enforcement officer enforce this traffic requirement. Still, the traffic statute is on the books and the evidence supports a finding that Delano violated this statute.

### III. Conclusion

---

[2] The Court recognizes that it puts chambers in jeopardy for traffic tickets with this assertion. Happily, we all ride the Rapid.

Case No. 1:05-cv-2485
Gwin, J.

For the above stated reasons, the Court **AMENDS** its earlier order, but still **DENIES** Defendant Delano's motion to suppress.

IT IS SO ORDERED.


Dated: March 3, 2008                           s/         *James S. Gwin*
                                               JAMES S. GWIN
                                               UNITED STATES DISTRICT JUDGE